**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NAPERVILLE DENTAL SPECIALISTS AND )<br>GENERAL ORAL HEALTH CARE, P.C.;       )<br>INNOVATIVE ORTHODONTIC CENTERS, P.C.;)<br>INNOVATIVE PEDIATRIC DENTISTRY, LLC;   )<br>and IMPACT DENTAL LABORATORY, LLC,    )<br>                                                                    )<br>            **Plaintiffs,**                             )<br>                                                                    )<br>        v.                                                         )<br>                                                                    )<br>THE CINCINNATI INSURANCE COMPANY,  )<br>                                                                    )<br>            **Defendant.**                            )  | No. 21 C 4671<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

This case concerns the application of commercial property insurance during the COVID-19 pandemic. Plaintiffs are owners and operators of dental practices in Illinois. They allege that Defendant, an insurance company, wrongfully denied their claims for lost business income that resulted from pandemic-related closure orders. Defendant has moved to dismiss the complaint, arguing that Plaintiffs have failed to allege a "direct physical loss" within the meaning of their insurance policies. For the reasons given below, Defendant's motion [17] is granted.

**BACKGROUND**

Plaintiffs are four Illinois-based entities that own and operate dental practices in the Chicagoland area.[1] (Compl. [1] ¶ 1.) Defendant, The Cincinnati Insurance Company, is an Ohio-

---

[1] Two Plaintiffs are professional corporations, while two are limited liability companies. (Compl. [1] ¶ 19.) The professional corporations are incorporated in and have their principal places of business in Illinois (*see id.*), which means that they are citizens of Illinois for jurisdictional purposes. *See Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 739–41 (7th Cir. 2004) (holding that a "professional corporation" is treated like any other corporation for jurisdictional purposes). Plaintiffs allege that the two LLCs have "Illinois citizenship" (Compl. ¶ 19), which the court understands to mean the LLCs' individual members, Anthony LaVacca and Manal Ibrahim, are Illinois citizens only. *See Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 904 (N.D. Ill. 2014) ("[A]n LLC is a citizen of every State of which any of the LLC's members is a citizen."). The court notes that it appears LaVacca and Ibrahim practice dentistry in Naperville, Illinois. See https://ndscare.com/ (last visited August 25, 2022); https://www.innovativeorthocenters.com/dr-manal-ibrahim/ (last visited August 25, 2022).

based corporation that provides insurance coverage to commercial entities.[2] (*Id.* ¶ 21.) In 2017, Defendant issued Plaintiffs an insurance policy covering the period from May 1, 2017 to May 1, 2020. (*See* Policy ECP 024 78 81, Ex. A to Def.'s Mot. to Dismiss [18-1] (hereinafter "Policy") at 002–03.)[3] The Policy provides several types of insurance coverage, including "Business Income" coverage, "Extra Expense" coverage, and "Civil Authority" coverage. The relevant provisions read as follows:

> **SECTION A. COVERAGE**
>
> We will pay for direct physical "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
> **5.    Coverage Extensions**
>
> . . . .
>
> **b.    Business Income and Extra Expense**
>
> . . . .
>
> **(1)    Business Income**
>
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. . . .
>
> **(2)    Extra Expense**
>
> We will pay "Extra Expense" you incur during the "period of restoration":
>
> **(a)**    To avoid or minimize the "suspension" of business and to continue "operations" . . . ; or

---

[2] Cincinnati is incorporated in and has its principal place of business in Ohio. (Compl. ¶ 21.)

[3] Plaintiffs attached the Policy to their complaint [1-1], but the court cites the version of the Policy that is attached to Defendant's motion [18-1]. These two documents are identical except for the addition of Bates numbers in the latter. (*See* Def.'s Mem. [18] at 3 n.3.)

> **(b)** To minimize the "suspension" of business if you cannot continue "operations".
>
> . . . .
>
> **(4) Civil Authority**
>
> We will pay for the actual loss of "Business Income" you sustain and "Extra Expense" you incur caused by action of civil authority that prohibits access to the "premises" due to direct physical "loss" to property, other than at the "premises", caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
> **SECTION G. DEFINITIONS**
>
> . . . .
>
> **9.** **"Loss"** means accidental loss or damage.
>
> . . . .
>
> **12.** **"Period of Restoration"** means the period of time that:
>
> **a.** Begins at the time of direct physical "loss".
>
> **b.** Ends on the earlier of:
>
> **(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> **(2)** The date when business is resumed at a new permanent location.

(*See* Policy at 040, 052–54, 070–71; *see also id.* at 118–19, 125 (similar).)

On March 15, 2020, in response to the escalating COVID-19 pandemic, Illinois Governor J.B. Pritzker issued an order closing all restaurants and bars to the public. (Compl. ¶ 3.) Five days later, Governor Pritzker ordered all "non-essential businesses" to close. (*Id.*) Then, on April 14, 2020, the Governor mandated the closure of dental offices for routine dental care and restricted all dental services to emergency and urgent care. (*Id.* ¶ 7.) As a result of these closure orders, Plaintiffs "were forced to halt ordinary operations, resulting in substantial lost revenues."

(*Id.* ¶ 9.) According to Plaintiffs, "[t]he continuous presence of the coronavirus amongst the public, and on or around Plaintiffs' premises, rendered the premises unsafe and unfit for their intended use and therefore[] caused both a risk of physical loss and . . . direct physical loss under the Policy." (*Id.* ¶ 46.)[4]

Plaintiffs submitted insurance claims to Defendant, requesting coverage for the business interruptions. (*Id.* ¶ 51.) Around May 28, 2020, Defendant denied their claims. (*Id.* ¶ 52.) Plaintiffs now seek (1) a declaratory judgment regarding the scope of the Policy and Defendant's obligation to pay, (2) damages for breach of contract, and (3) a penalty for bad faith denial of insurance under 215 ILCS 5/155. (*Id* ¶¶ 53–69.)

## LEGAL STANDARD

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019).

---

[4] Plaintiffs do not allege the duration of these restrictions, but it appears they were lifted, at least in part, by May 2022. See https://www.chicagotribune.com/coronavirus/ct-coronavirus-dentists-reopen-20200516-f5opw56zzfbe5fjmqdgcnjl7mq-story.html (last visited August 25, 2022.)

4

**DISCUSSION**

In its motion to dismiss, Defendant contends that Plaintiffs have failed to allege any "direct physical loss," which is a prerequisite for coverage under the Policy. According to Defendant, "direct physical loss" requires a physical change, an alteration, or damage to the covered property, and the mere presence of a virus does not meet that standard. As Plaintiffs read the term "direct physical loss," it instead does encompass the alleged "loss of use" of their property due to the government's closure orders.

Plaintiffs' interpretation of the term "direct physical loss" is foreclosed by the Seventh Circuit's recent decision in *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021). In that case, on all fours with this one, the Seventh Circuit rejected the plaintiffs' theory that partial "loss of use, unaccompanied by any physical alteration to property, may constitute 'direct physical loss'" for the purpose of commercial property insurance like the Policy in this case. *Id.* at 329–30, 334. The court also rejected the suggestion that the mere presence of the virus, or the partial closure orders themselves, physically altered the plaintiffs' property within the meaning of their policies. *Id.* at 334–35.

*Sandy Point* controls this case. It involved the (1) same type of plaintiff (a dental group), (2) the same defendant (The Cincinnati Insurance Company), (3) the same applicable policy language (i.e., the requirement of "direct physical loss" for "Business Income," "Extra Expense," or "Civil Authority" coverage), and (4) the same basic claim (i.e., that plaintiffs sustained business-income losses due to government-mandated closures during the COVID-19 pandemic). *Id.* at 330–31. The Seventh Circuit discussed and rejected essentially the same textual arguments that Plaintiffs make in this case. For instance, the Seventh Circuit rejected the notion that the disjunctive phrase "loss or damage" (within the definition of "loss") means loss need not have a physical aspect. *Id.* at 332 (explaining that because "[t]he phrase is 'direct physical loss or damage,'" "[w]hatever 'loss' means, it must be physical in nature"). The court also rejected the argument that any of the policy's express exclusions (e.g., for nuclear reactions, radiation, or

5

radioactive contamination) supported an inference that "direct physical loss" was not limited to physical alterations to property. *Id.* at 332–33. And after reviewing other aspects of the policy language—including the same "period of restoration" language included in the Policy here—the court concluded that "[t]he Policy is replete with textual clues that reinforce the conclusion that 'direct physical loss' requires a physical alteration to property." *Id.* at 333.

Plaintiff tries to relitigate some of these interpretive issues by citing two district court cases. (*See Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F. Supp. 3d 457 (N.D. Ill. 2021); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 521 F. Supp. 3d 729 (N.D. Ill. 2021).) But these nonbinding cases were decided well before *Sandy Point* and were discussed in the briefs submitted to the Seventh Circuit. They provide no basis for this court to depart from Seventh Circuit authority.

Nor is the court inclined "to find that the language of the insurance policy is ambiguous consistent with the recent Illinois Supreme Court[] decision" in *Sproull v. State Farm Fire & Casualty Co.*, 2021 IL 126446, 184 N.E.3d 203, as Plaintiff urges. *Sproull* involved a completely different issue: "whether an insurer may depreciate labor costs in determining the 'actual cash value' (ACV) of a covered loss when a homeowner's policy does not define that term." *Id.* ¶ 1. At its most relevant, *Sproull* stands for the general principles that undefined contract terms should be given their "plain, ordinary, and popular meaning," and that contract terms "susceptible to more than one reasonable meaning" must be "construed strictly against the insurer." *Id.* ¶ 19. The Seventh Circuit recognized and adhered to these well-established principles. *See Sandy Point*, 20 F.4th at 331. The court simply concluded that the plaintiffs' construction of the term "direct physical loss" was not reasonable. *Id.* at 331–34.

In summary, the court concludes that Plaintiffs have failed to allege a "direct physical loss" within the meaning of the Policy. Because Plaintiffs have not established a valid claim for coverage under the Policy, their claims for breach of contract and bad faith denial of insurance

must fail as well. See *Rosebud Rest., Inc. v. Regent Ins. Co.*, No. 20 C 5526, 2022 WL 2669522, at *6 (N.D. Ill. July 11, 2022).

## CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to dismiss [17]. Plaintiffs have leave to file an amended complaint within 21 days.

ENTER:

Dated: August 25, 2022

*[signature]*
REBECCA R. PALLMEYER
United States District Judge